Naomi Jiyoung Bang, SDTX No. 604286
PACIFIC JUSTICE INSTITUTE
2121 Market Street, Unit 37
Galveston, TX 77550
Email: nbang@pji.org

Emily Mimnaugh, *pro hac vice pending*
PACIFIC JUSTICE INSTITUTE
1580 Grand Point Way #33171
Reno, NV 89533
Email: emimnaugh@pji.org

Charlotte Y. Bergeron, *pro hac vice pending*
1040 Audubon Street
Lake Charles, LA 70605
Tel.: (225) 229-7135
Email: cbergeronlaw@gmail.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RYAN ANDREPONT, BRODY ARDOIN, PATRICK J. BABINEAUX, III, WILLIAM FARRELL, TIMOTHY STIDHAM | Case No.: |
| | **VERIFIED ORIGINAL COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.]** |
| Plaintiffs, | [Demand for Jury Trial] |
| v. | |
| British Petroleum PLC, a Corporation, and DOES 1-100, | |
| Defendants. | |

Plaintiffs' Verified Original Complaint

## INTRODUCTION

1. In the fall of 2021, Defendant British Petroleum ("Defendant" or "BP") made a determination that a certain group of its employees should be vaccinated against the COVID-19 virus.

2. On September 15, 2021, Defendant issued a COVID-19 vaccine requirement that was a condition of employment for all employees and contractors who worked offshore in the Gulf of Mexico ("GoM") or employees and contractors who would temporarily visit offshore BP assets. The vaccine requirement also applied to onshore-based employees who traveled periodically offshore to BP assets. The written deadline to be vaccinated was November 15, 2021.

3. This vaccine requirement specific to BP's GoM employees covered and included then BP employees Ryan Andrepont, Brody Ardoin, Patrick J. Babineaux, III, William Farrell and Timothy Stidham (each a "Plaintiff" and together, "Plaintiffs").

4. In sharp contrast, BP employees working at onshore facilities, like the Cherry Point refinery in Washington state, were never mandated to take the COVID-19 vaccine as a requirement of employment. Further, office personnel, including those working at Defendant's United States headquarters in Houston, Texas, were not subject to the COVID-19 vaccine mandate.

5. Defendant acknowledged in the September 15, 2021 COVID-19 vaccine requirement announcement that some employees could choose not to be vaccinated because of religious or medical reasons, and that such employees could initiate the religious and/or medical accommodation process.

6. Initially, Defendant appeared to recognize that some of its employees could not be vaccinated due to religious or medical reasons. Defendant urged such employees to submit "accommodation requests" on or before September 26, 2021. The Plaintiffs were informed that a lack of compliance with the vaccination mandate could result in discipline up to and including termination.

7. Plaintiffs timely completed and submitted their religious exemption request forms provided by Defendant, notifying Defendant that their sincerely held religious beliefs conflicted with the new COVID-19 vaccination requirement specific to GoM employees; each Plaintiff also requested reasonable accommodations.

8. At first, Defendant provided exemption request forms to Plaintiffs that gave the appearance that perhaps even some religious accommodation requests might be "granted.[1]"

9. To the extent that Defendant ever claimed to have seriously considered Plaintiffs' accommodation requests, it appeared to be a pantomime performance to Plaintiffs. Defendant either did not offer Plaintiffs any interactive dialogue about their requests for accommodation, or if they did, that dialogue focused on the sincerity of Plaintiffs' religious beliefs with improper questions, and any dialogue had failed to address possible reasonable accommodations. Regardless of the path offered to each Plaintiff, the result was the same: Defendant unlawfully denied each Plaintiff's request for reasonable accommodation.

10. In all cases, Defendant offered no meaningful dialogue or interaction with Plaintiffs to explore possible reasonable accommodations.

---

[1] Plaintiffs contend that Title VII can be viewed as divided into two initial stages. In the first stage, an employer is notified of an employee's sincerely held religious belief that conflicts with a work requirement. This is a request for Religious Exemption. If employer accepts that the professed belief is sincerely held and that there is a conflict between the religious belief and the work requirement, the employer shall grant the request for Religious Exemption. In the second stage of the Title VII process, the employer then has an affirmative obligation to search for and identify any potential "reasonable accommodation" for the employee. This second stage process includes a requirement that the employer engage in an interactive process with the employee in order to find and offer the employee any available "reasonable accommodation."

It is unclear from the facts and Defendant's correspondence with Plaintiffs' whether any of their Religious Exemption requests, based on Plaintiffs' sincerely held religious beliefs, were ever formally granted by Defendant. Defendant appears to have proceeded straight to referencing Plaintiffs' requests for religious exemption as "accommodation requests" or "religious accommodations," and seemed to combine the two steps of the Title VII analysis. Since Defendant moved onto the second stage of the Title VII analysis by referring to "accommodation requests," Plaintiffs presume that Defendant approved and granted Plaintiffs' Religious Exemptions requests. Thereafter, Defendant appears to have proceeded to the second stage of the Title VII process – that of exploring a "reasonable accommodation." At this stage, Defendant denied Plaintiffs' proffered reasonable accommodations without the legally required interactive process, which required Defendant to conduct a "good faith" meaningful dialogue with each Plaintiff to determine if a reasonable accommodation was available to each Plaintiff.

11.     Instead, Defendant placed most of the Plaintiffs on two months of unpaid leave[2] directing them to find other jobs within BP[3] -- after Plaintiffs' access to company email and internal communication sites was revoked, making it difficult to access, apply for and communicate about possible other job openings, and then, ultimately, terminated every Plaintiff in January 2022.

12.     Upon information and belief, some of the Plaintiffs could have kept their Retiree Reimbursement Account (RRA) but for Defendant's refusal to grant them a reasonable accommodation.

13.     All Plaintiffs could have received their 2021 bonus but for Defendant's refusal to grant them a reasonable accommodation.

14.     This action is based on the unlawful actions of the Defendant, including violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) ("Title VII"), Section 21.108 of the Texas Labor Code, and the common law tort of wrongful termination in violation of public policy.

15.     The gravamen of this Complaint is that Defendant refused to engage in any meaningful dialogue or good faith, failed to engage in the required interactive process and explore reasonable accommodations, placed most of the Plaintiffs on unpaid leave for two months as a "reasonable accommodation," stripped them of their benefits, including RRA for some of the Plaintiffs and bonus payments for all of the Plaintiffs, and ultimately terminated all Plaintiffs, and otherwise discriminated and retaliated against Plaintiffs due to their religious beliefs.

---

[2] According to Defendant's correspondence, the first month of unpaid leave was "approved," which meant only allowing the continuation of health benefits without receipt of any salary; the second month of unpaid leave was "unapproved," thereby revoking all benefits to Plaintiffs and continuing to deny Plaintiffs any and all salary.

[3] This was in violation of Company policy that permitted employees on unpaid leave to access their emails specifically to us[e] the Career Center "to search for and apply for jobs." See Exhibit A, *Computer Access While on Unpaid Leave Policy*, Updated August 21, 2021, U.S. People Relations.

16.     These are clearly adverse employment actions under applicable law.

17.     These adverse employment actions occurred due to Plaintiffs' expressing their sincere religious beliefs against taking the COVID-19 vaccine and continued and worsened after they submitted their religious exemption requests, culminating in the termination of their jobs.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that federal questions are raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

19.     This Court has supplemental jurisdiction over Plaintiffs' related claims arising under corollary state anti-discrimination law of Texas pursuant to 28 U.S.C. § 1367(a), and the common law tort of Wrongful Termination in Violation of Public Policy.

20.     Venue is proper in the Southern District of Texas under 42 U.S.C. § 2000e-5(f)(3), in that the Defendant's office with whom Plaintiffs had dealings is in the Southern District of Texas.  Moreover, upon information and belief, Defendant's headquarters in the United States are located in Houston, Texas which is also located within the Southern District of Texas.

## PARTIES

21.     Plaintiff Andrepont resides at 3190 Riverside Road; Jennings, Louisiana 70546.

22.     Plaintiff Ardoin resides at 12090 River Highlands Drive; Saint Amant, Louisiana 70774.

23.     Plaintiff Babineaux resides at 1318 South Barnett Springs Street; Ruston, Louisiana 71270.

24.     Plaintiff Farrell resides at 108 Enterprise Road SW; Roxie, Mississippi 39661.

25.     Plaintiff Stidham resides at 1919 Gaylord Road, Valier, Montana 59486.

26.     Plaintiffs had assignments based out of Houma, Louisiana. Plaintiffs travelled to a heliport in Houma and then flew to their assigned offshore BP asset in the Gulf of Mexico.

27.     At all times relevant herein, Plaintiffs were employees of Defendant, who operated out of its offices located in Houston, TX 77079, where it is believed that Defendant is incorporated.

28.     Upon information and belief, Defendant can be served through the CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

29.     Defendant is and was at all times relevant herein an employer as defined under 42 U.S.C. § 2000e(b).

30.     The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1-100, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names.  Plaintiffs, upon information and belief, allege that each of the fictitiously named Defendants is in some way responsible for, or participated in or contributed to, the matters and things complained of herein, and is legally responsible in some manner. Plaintiffs will seek leave to amend this Complaint when the true names, capacities, and responsibilities have been ascertained.

## STATEMENT OF FACTS

**Plaintiff Ryan Andrepont**

31.     Mr. Andrepont is a 43-year-old male, born in 1979, who has been with BP for over eighteen (18) years.  Mr. Andrepont has an Associate Degree in Computer Technology from Crowley Acadian Technical College in Louisiana.

32.     Mr. Andrepont is and was at all times relevant herein a devout, practicing Catholic.

33.     Mr. Andrepont first worked on a BP asset in the Gulf of Mexico in December 2004 through Grey Star contracting service. BP hired Mr. Andrepont as an Operations Technician on August 16, 2005. BP later awarded contractor service time that recognized his time working for BP from 2004.

34.    Mr. Andrepont was promoted to Production Lead Technician in May 2013. He was promoted again in April 2016 to Production/Control Room Technician, his final position with BP prior to termination.

35.    On September 19, 2021, Mr. Andrepont submitted his Religious Exemption request with respect to the COVID-19 vaccine based on his sincerely held religious beliefs. He included in his request serology testing to provide proof of natural immunity to COVID-19 as an alternate accommodation to vaccination. (Mr. Andrepont's Religious Exemption request is attached as Exhibit B).

36.    Defendant's Human Resources staff conducted a fifteen (15) minute "interview" with Mr. Andrepont to discuss his Religious Exemption request.

37.    On November 4, 2021, Defendant denied Mr. Andrepont the "reasonable accommodation" he requested in his Religious Exemption request.

38.    Under Title VII, an employer must offer a reasonable accommodation to an employee, unless such an accommodation would impose an undue hardship for the employer's business.  A reasonable accommodation is one that will "resolve" the conflict for the employee, and involuntary, unpaid leave does not, and did not, resolve the conflict faced by Plaintiffs.[4]

39.    Instead of the reasonable accommodation that was requested by Mr. Andrepont, the Defendant instead offered its own version of a "reasonable accommodation."  Even though

---

[4] *See Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004) ("Under Title VII, an employer must offer a reasonable accommodation **to resolve a conflict between an employee's sincerely held religious belief and a condition of employment** unless such an accommodation would create an undue hardship for the employer's business.") (emphasis added)

Defendant presented its offer to Mr. Andrepont as a "reasonable accommodation," it was neither reasonable nor an accommodation.[5]

40.     The "reasonable accommodation" granted by Defendant – after no legally meaningful dialogue had occurred and Mr. Andrepont's requests were dismissed or ignored – was to place Mr. Andrepont on an unpaid leave of absence from November 15, 2021 until January 15, 2022, and then terminated.

41.     Upon information and belief, on or about November 15, 2022, Defendant revoked Mr. Andrepont's access to his BP email account.  Defendant also revoked Mr. Andrepont's access to BP's internal intranet (which cannot be accessed by the general public).  This meant he could not access BP's internal job postings to search for alternative jobs with BP, even though this was ostensibly part of the "accommodation" offered by BP.  Without access to internal job postings, the offer of two-months unpaid leave to find alternative BP positions was a hollow offer to Plaintiff.  While BP Human Resources staff sent some job postings to Mr. Andrepont's personal email account shortly before the end of his unpaid leave, he was not able to obtain another job with BP prior to termination.

42.     Upon information and belief, Defendant, by revoking Mr. Andrepont's access to BP's intranet and by revoking his access to his BP email account, took intentional and overt actions to remove the open line of communication provided by BP's intranet communication system, thwarting any possibility of Mr. Andrepont's finding an alternative job position with Defendant.

43.     On January 19, 2022, Defendant terminated Mr. Andrepont.

---

[5] "[L]eave without pay differs very little from termination." *Love v. City of Dallas*, No. 3:96-CV-0532-R, 1997 WL 278126, at *6 (N.D. Tex. May 14, 1997).

44.     Mr. Andrepont would have received his 2021 bonus but for Defendant's refusal to grant him a reasonable accommodation.

45.     Mr. Andrepont timely filed a charge of Religious Discrimination with the Equal Employment Opportunity Commission ("EEOC") in Houston, Texas on March 17, 2022.

46.     The EEOC issued Mr. Andrepont a Right to Sue Letter on September 21, 2022. (The Right to Sue letter is attached as Exhibit C.)

**Plaintiff Brody Ardoin**

47.     Mr. Ardoin is a 34-year-old male, born in 1988, who has worked in the oil and gas industry for twelve (12) years.  He was hired by Defendant in December 2014 to work as a Production Technician. Mr. Ardoin was promoted several times until he reached "Qualified" Control Room Technician, a similar position to Senior Control Room Technician within the industry. This was Mr. Ardoin's job with BP at the time he was terminated.

48.     Mr. Ardoin is and was at all times relevant herein a devout, practicing Christian.

49.     On November 3, 2021, Mr. Ardoin submitted his Religious Exemption request to Defendant. Mr. Ardoin included in his request that he was willing to abide by any reasonable alternative safety measures as an alternative to vaccination. (Mr. Ardoin's Religious Exemption request is attached as Exhibit D).

50.     Upon information and belief, neither Defendant's Human Resources staff nor did any other employee or representative of Defendant ever make contact with Mr. Ardoin about his request for Religious Exemption before summarily denying his accommodation request.

51.     On November 4, 2021, Defendant denied Mr. Ardoin's accommodation request. There was no discussion or interaction on the issue of his religious exemption or any discussion about possible reasonable accommodations.

52.     Mr. Ardoin submitted a request for leave under the Family and Medical Leave Act of 1993 ("FMLA") due to the significant stressors he experienced at work including harassment and coercion by the Defendant to force employees such as himself to be vaccinated.

53.     Mr. Ardoin was placed on unpaid leave on November 15, 2021. He was transitioned to FMLA leave on December 7, 2021.

54.     The "reasonable accommodation" granted by Defendant – after no meaningful dialogue had occurred and Mr. Ardoin's requests were ignored – was to place Mr. Ardoin on an unpaid leave of absence from November 15, 2021 until December 7, 2022 when he started a paid leave of absence under FMLA.

55.     Upon information and belief, on or about November 15, 2022, Defendant revoked Mr. Ardoin's access to his BP email account.  Defendant also revoked Mr. Ardoin's access to BP's internal intranet (which cannot be accessed by the general public).  This meant he could not access BP's internal job postings to search for alternative jobs with BP, even though this was ostensibly part of the "accommodation" offered by BP.  Without access to internal job postings, the offer of two-months unpaid leave to find alternative BP positions was a hollow offer which BP made – making it next to impossible for Mr. Ardoin to find and accept other jobs in the company.

56.     During his leave of absence, BP Human Resources staff sent Mr. Ardoin one expired link to a job posted to his private email account. Mr. Ardoin told BP Human Resources

staff many times about the difficulties he experienced in his job search by not having access to his BP email account.

57.     Upon information and belief, Defendant, by revoking Mr. Ardoin's access to BP's intranet and by revoking his access to his BP email account, took intentional and overt actions to remove the open line of communication provided by BP's intranet communication system, thwarting any possibility of Mr. Ardoin's finding an alternative job position with Defendant.

58.     On January 18, 2022, Defendant terminated Mr. Ardoin from his position.

59.     Mr. Ardoin would have received his 2021 bonus but for Defendant's refusal to grant him a reasonable accommodation.

60.     Mr. Ardoin timely filed a charge of Religious Discrimination with the EEOC in Houston, Texas on March 30, 2022.

61.     The EEOC issued a Right to Sue Letter on October 14, 2022.  (The Right to Sue letter is attached as Exhibit E.)

**Plaintiff Patrick J. Babineaux, III**

62.     Mr. Babineaux is a 47-year-old male, born in 1975, who has worked in the oil and gas industry for seventeen (17) years. Defendant hired Mr. Babineaux in March 2011 to work as a Measurement Technician 2. He was later promoted to Measurement Technician 1, the highest level in his craft. This was his final position with BP prior to his termination.

63.     On October 8, 2021, Mr. Babineaux submitted his Religious Exemption request to Defendant. Mr. Babineaux included in his request that he would comply with reasonable safety

protocols as an alternative to the vaccine. (Mr. Babineaux's Religious Exemption request is attached as Exhibit F.)

64.     Mr. Babineaux is and was at all times relevant herein a devout, practicing Christian.

65.     Defendant's Human Resources staff conducted a fifteen (15) minute "interview" with Mr. Babineaux to discuss his exemption request.

66.     On or about November 4, 2021, Defendant denied Mr. Babineaux's reasonable accommodation" that he had requested in his Religious Exemption request.

67.     Instead of the reasonable accommodation that was requested by Mr. Babineaux, the Defendant instead offered its own version of a "reasonable accommodation."  Even though Defendant presented its offer to Mr. Babineaux as a "reasonable accommodation," it was neither reasonable nor an accommodation.

68.     The "reasonable accommodation" granted by Defendant – after no meaningful dialogue had occurred and Mr. Babineaux's requests were ignored – was to place Mr. Babineaux on an unpaid leave of absence from November 15, 2021 until January 15, 2022, and then terminate him.

69.     Upon information and belief, on or about November 15, 2022, Defendant revoked Mr. Babineaux's access to his BP email account.  Defendant also revoked Mr. Babineaux's access to BP's internal intranet (which cannot be accessed by the general public).  This meant he could not access BP's internal job postings to search for alternative jobs with BP.  Without access to

internal job postings, the offer of two-months unpaid leave to find alternative BP positions was a hollow offer which BP made - through its other actions - impossible for him to accept.

70.     Mr. Babineaux was thwarted in his efforts to search and apply for, and obtain another job with BP.  As with the other Plaintiffs, the primary obstacle was blocked access to BP's internal communication system that is critical for finding job postings and submitting applications. He called and emailed about jobs with Defendant who ultimately was non-responsive.

71.     Upon information and belief, Defendant, by revoking Mr. Babineaux's access to BP's intranet and by revoking his access to his BP email account, took intentional and overt actions to remove the open line of communication provided by BP's intranet communication system, thwarting any possibility of Mr. Babineaux's finding an alternative job position with Defendant.

72.     On January 19, 2022, Defendant terminated Mr. Babineaux.

73.     Mr. Babineaux would have received his 2021 bonus but for Defendant's refusal to grant him a reasonable accommodation.

74.     Mr. Babineaux timely filed a charge of Religious Discrimination with the EEOC in Houston, Texas on March 30, 2022.

75.     The EEOC issued a Right to Sue Letter on September 21, 2022.  (The Right to Sue letter is attached as Exhibit G.)


**Plaintiff William Farrell**

76.     Mr. Farrell is a 52-year-old male, born in 1970, who was hired by Defendant in October 2007 to work as an Instrument Technician.

77.     Mr. Farrell is and was at all times relevant herein a devout, practicing Baptist.

78.     On October 7, 2021, Mr. Farrell submitted his Religious Exemption request to Defendant. Mr. Farrell included in his request that he would comply with reasonable safety protocols as an alternative to the vaccine. (Mr. Farrell's Religious Exemption request is attached as Exhibit H.)

79.     Defendant's Human Resources staff conducted a fifteen (15) minute "interview" with Mr. Farrell to discuss his exemption request.

80.     On or about November 4, 2021, Defendant denied Mr. Farrell the "reasonable accommodation" he requested in his Religious Exemption request.

81.     Instead of the reasonable accommodation that was requested by Mr. Farrell, the Defendant instead offered its own version of a "reasonable accommodation."  Even though Defendant presented its offer to Mr. Farrell as a "reasonable accommodation," it was neither reasonable nor an accommodation.

82.     Prior to being placed on unpaid leave, Mr. Farrell applied for a similar position with Defendant in which he met all the qualifications and experience requirements, but Defendant denied him that job.

83.     Plaintiff then contacted the person overseeing the job posting that he applied for and was told that all positions were filled, even though the jobs were still listed as open and vacant on the company portal. Upon information and belief, another onshore job was initially approved by a manager with Defendant, but Plaintiff was also denied that job.  After these actions, Mr. Farrell felt like he had been blacklisted.

84.     The "reasonable accommodation" granted by Defendant – after no meaningful dialogue had occurred and Mr. Farrell's requests were ignored – was to place Mr. Farrell on an unpaid leave of absence from November 15, 2021 until January 15, 2022, and then terminate him.

85.     Upon information and belief, on or about November 15, 2022, Defendant revoked Mr. Farrell's access to his BP email account.  Defendant also revoked Mr. Farrell's access to BP's internal intranet (which cannot be accessed by the general public).  This meant he could not access BP's internal job postings to search for alternative jobs with BP, even though this was ostensibly part of the "accommodation" offered by BP.  Without access to internal job postings, the offer of two-months unpaid leave to find alternative BP positions was a hollow offer which BP made - making it nearly impossible for him to find and accept another job within the company.

86.     Upon information and belief, Defendant, by revoking Mr. Farrell's access to BP's intranet and by revoking his access to his BP email account, took intentional and overt actions to remove the open line of communication provided by BP's intranet communication system, thwarting any possibility of Mr. Farrell find an alternative job position with Defendant.

87.     On January 18, 2022, Defendant terminated Mr. Farrell.

88.     Mr. Farrell would have received his 2021 bonus but for Defendant's refusal to grant him a reasonable accommodation.

89.     Mr. Farrell timely filed a charge of Religious Discrimination with the EEOC in Houston, Texas on July 17, 2022.

90.     The EEOC issued a Right to Sue Letter on September 23, 2022.  (The Right to Sue letter is attached as Exhibit I.)

**Plaintiff Timothy Stidham**

91.     Mr. Stidham is a 39-year-old male, born in 1983, who prior to working for Defendant served three tours of duty in Iraq with the U.S. Marine Corps from July 2001 through 2006. He worked as a helicopter mechanic during two tours and base security for another tour.  He is also a cancer survivor following the removal of a tumor in 2012.

92.     Mr. Stidham is and was at all times relevant herein a devout, practicing non-denominational Christian.

93.     Mr. Stidham has an Associate Degree in Instrumentation and Controls Technology from Bellingham Technical College in Bellingham, Washington.

94.     Mr. Stidham had worked for BP since February 2010. He started as an Instrumentation and Electrical Technician working at the BP Cherry Point refinery in Washington state. He moved his family to Texas in 2021 and began an Instrumentation Technician job to work on BP owned GoM assets in August 2021.

95.     Plaintiff Stidham learned shortly after moving his family and starting his job that BP planned to require the COVID-19 vaccine on September 15, 2021.

96.     On November 1, 2021, Mr. Stidham submitted his Religious Exemption request from having to take the COVID-19 vaccine based on his sincere religious beliefs. Mr. Stidham included in his request that he would comply with reasonable safety protocols as an alternative to the vaccine. (Mr. Stidham's Religious Exemption request is attached as Exhibit J.)

97.     Defendant's Human Resources staff conducted a fifteen (15) minute "interview" with Mr. Stidham to discuss his exemption request.

98.     On November 6, 2021, Defendant denied Mr. Stidham the "reasonable accommodation" he requested in his Religious Exemption request.

99.     Instead of the reasonable accommodation that was requested by Mr. Stidham, the Defendant instead offered its own version of a "reasonable accommodation."   Even though Defendant presented its offer to Mr. Stidham as a "reasonable accommodation," it was neither reasonable nor an accommodation.

100.     Mr. Stidham applied for five different BP onshore roles that he was qualified for with the permission of his Team Lead.  He was willing to relocate again in order to stay employed with BP.  Mr. Stidham received two phone calls regarding positions he applied for, but when he received no other responses, he felt like he had been blacklisted.

101.     The "reasonable accommodation" granted by Defendant – after no meaningful dialogue had occurred and Mr. Stidham's requests were ignored – was to place Mr. Stidham on an unpaid leave of absence from November 15, 2021 until January 15, 2022, and then terminate him.

102.     Upon information and belief, on or about November 15, 2022, Defendant revoked Mr. Stidham's access to his BP email account.  Defendant also revoked Mr. Stidham's access to BP's internal intranet (which cannot be accessed by the general public).  This meant he could not access BP's internal job postings to search for alternative jobs with BP, even though this was ostensibly part of the "accommodation" offered by BP.  Without access to internal job postings, the offer of two-months unpaid leave to find alternative BP positions was a hollow offer which BP made - making it nearly impossible for him to find and accept another job within the company.

103.     Like each of the other Plaintiffs, upon information and belief, BP shut down access to his BP email account as well as access to BP's website that included the internal job openings search tools when he was on unpaid leave.

104.    Mr. Stidham, without access to BP's intranet and without access to his BP email account, found it nearly impossible to identify BP job openings and to contact potential BP hiring managers.

105.    Upon information and belief, Defendant, by revoking Mr. Stidham's access to BP's intranet and by revoking his access to his BP email account, took intentional and overt actions to remove the open line of communication provided by BP's intranet communication system, thwarting any possibility of Mr. Stidham find an alternative job position with Defendant.

106.    On January 18, 2022, Defendant terminated Mr. Stidham.

107.    Mr. Stidham would have received his 2021 bonus but for Defendant's refusal to grant him a reasonable accommodation.

108.    Mr. Stidham would have kept his Retiree Reimbursement Account (RRA) but for Defendant's refusal to grant him a reasonable accommodation.

109.    Mr. Stidham timely filed a charge of Religious Discrimination with the EEOC in Houston, Texas on April 8, 2022.

110.    The EEOC issued a Right to Sue Letter on November 16, 2022.  (The Right to Sue letter is attached as Exhibit K.)


**Summary of Consequences of Defendant's Unlawful Actions Against Plaintiffs**

111.    All Plaintiffs were the primary financial providers for their families, and some were the sole financial providers for their families. Some Plaintiffs' families were radically changed in that mothers who were committed to raising their children were forced into the workplace. Some of the Plaintiffs have minor children at home that they feed, clothe, and educate. Some Plaintiffs are supporting children aged 18 and over with education and living expenses.

Some Plaintiffs' young adult working children had been on their father's health insurance plan until they were terminated by Defendant.

### Christian Plaintiffs Sincerely Held Religious Beliefs

112.     As faithful Christians, Plaintiffs believe the Bible to be authoritative. Plaintiffs hold strong, sincerely held beliefs based on their understanding of Scripture and the teachings of their respective churches.

113.     As faithful Christians, some of the Plaintiffs also hold strong religious beliefs based on their church's specific teachings and their church's interpretations of the Bible.

### Defendant's Title VII Violations

114.     Plaintiffs submitted their Religious Exemptions based on their sincere religious beliefs that conflicted with a BP work requirement, and each Plaintiff asked for a reasonable accommodation.

115.     Defendant violated Title VII in several ways.

116.     First, during several of the above described fifteen-minute interviews relating to Plaintiffs' decision to not take the vaccine, Defendant improperly questioned several Plaintiffs on intrusive and unnecessary details of their faith, and other impermissible questions such as whether they had taken other pharmaceuticals or vaccines in the past.

117.     Second, Defendant unlawfully denied the Plaintiffs' requests for reasonable accommodation in connection with the Religious Exemption requests that Defendant apparently granted after Plaintiffs notified Defendant of their sincerely held religious beliefs that conflicted with a work requirement.

118.     Third, upon information and belief, Defendant failed to follow the procedures and requirement, as proscribed under applicable law, to engage in a meaningful dialogue with Plaintiffs to seek a reasonable accommodation to their sincerely held religious beliefs.   Defendants unlawfully denied Plaintiffs a good faith interactive process or other meaningful efforts to identify possible reasonable accommodations.

119.     Fourth, Defendant failed to provide any reasonable accommodations by placing Plaintiffs on an involuntary, unpaid leave of absence.   Defendant presented this unpaid leave of absence as a "reasonable accommodation" that would provide Plaintiffs with two months to find another job within BP.   Defendant's "offer" to Plaintiffs cannot be said to have been made in good faith because BP simultaneously revoked Plaintiffs' access to their BP email accounts and likewise blocked Plaintiffs' access to the BP intranet and access to its portal for internal, BP employment opportunities.   For some Plaintiffs, it appears that Defendant sabotaged or denied them possible job opportunities that could have been found.

120.     Fifth, Defendant retaliated against Plaintiffs for exercising their religious rights by terminating Plaintiffs. Retaliation occurs when an employer punishes employees for asserting their rights to be free from employment discrimination.   Plaintiffs sought accommodations based on their sincere religious beliefs from the vaccine mandate.   Unpaid leave followed by termination is classic retaliation.

121.     Plaintiffs' religious beliefs were a motivating factor in Plaintiffs' being placed on unpaid leave in November 2021, and then being terminated in January 2022.

122.     The above-described unlawful discrimination against Plaintiffs is even more egregious in light of the August 11, 2022 public announcement[6] by the federal Center for Disease

---

[6] CDC, "Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems — United States, August 2022" (Aug. 11 2022), available at:

Control and Prevention ("CDC"), where the CDC Guidance and recommendations "no longer differentiate based on a person's vaccination status."[7]  Thus, the new CDC Guidance uniformly applies the same recommendations for all individuals regardless of vaccination status.

123.    These changes were also announced on August 11, 2022 by CDC leader Dr. Greta Massetti through CBS News,[8] summarizing the new CDC Guidance for the public as follows:

(a)    The CDC no longer differentiates by whether people are up-to-date on their vaccinations;

(b)    Testing for COVID-19 is no longer recommended in most places for people who do not have COVID symptoms (i.e. asymptomatic persons);

(c)    People who have tested positive for COVID-19 can stop wearing masks if their symptoms have improved and they test negative twice in a row; and

(d)    that "quarantine of exposed persons is no longer recommended, regardless of vaccination status." [9]

124.    In a published statement, the CDC stated that the Delta variant resulted in similarly high COVID-19 viral loads in vaccinated and unvaccinated people.[10]  CDC Director Rochelle

---

https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm (last visited September 26, 2022).  *See also*, CDC, "Isolation and Precautions for People with COVID-19" (Aug. 11, 2022), available at: https://www.cdc.gov/coronavirus/2019-ncov/your-health/isolation.html (reflecting the CDC's recommendation to reduce the quarantine period to five (5) days for an individual who tests positive for COVID-19, regardless of vaccination status) (last visited December 15, 2022).

[7] *Id.*

[8] *CBS News,* "CDC updates its COVID-19 guidelines in sweeping overhaul" (Aug. 11, 2022), available at: https://www.cbsnews.com/news/cdc-covid-19-guidelines-updated-recommendations/?utm_source=facebook&utm_medium=news_tab&fs=e&s=cl#l6qlrxhczgg168meys (last visited December 15, 2022).

[9] *Id.*

[10] Statement from CDC Director Rochelle P. Walensky issued on July 30, 2021, https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html.  (last visited December 15, 2022)

Walensky has confirmed that COVID-19-positive individuals carry the same "viral load" (equivalent to the risk of spreading infection) whether they are vaccinated or unvaccinated. Id.

125.    The CDC Director's statement was based on a study in the summer of 2021 which tested vaccinated and unvaccinated persons and found that "[c]ycle threshold values [COVID-19 viral loads] were similar among specimens from patients who were fully vaccinated and those who were not."[11]

126.    Later studies have found that the viral load associated with COVID-19 variants such as Omicron also does not vary based upon vaccination status: "[f]ully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts."[12]

127.    In another official statement, the CDC confirmed those studies and stated that it expects that anyone with an Omicron infection, regardless of vaccination status, whether or not they have symptoms, can spread the virus to others.[13]

128.    Because the viral loads are no different for the vaccinated and the unvaccinated, Defendant's position that the unvaccinated pose a danger to themselves, coworkers, and the public,

---

[11] "Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021," *Morbidity and Mortality Weekly Report, CDC* (July 30, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2_w. (last visited December 15, 2022)

[12] David W. Eyre, B.M., B.Ch., D.Phil. et al., *Effect of Covid-19 Vaccination on Transmission of Alpha and Delta Variants*, New England J. Med 386:744-756 (February 24, 2022), https://www.nejm.org/doi/full/10.1056/NEJMoa2116597.  (last visited December 15, 2022)

[13] "Omicron Variant: What You Need to Know," *CDC* (March 29, 2022), https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html.  (last visited December 15, 2022)

but that the vaccinated do not pose this danger, is not consistent with the above-cited statements from the CDC.

129.    CDC spokesperson Greta Massetti stated that immunity for the population is now around 95 percent when combining those who have contracted and recovered from COVID-19 with those that have been vaccinated.  As such, "it makes the most sense not to differentiate" between the vaccinated and unvaccinated.[14]

130.    Despite this foregoing public CDC guidance and public statements, Defendant has not offered any of the Plaintiffs the opportunity to return to work and resume their employment.

131.    Therefore, the discriminatory and retaliatory treatment in not allowing Plaintiffs' proposed accommodation of testing and masking has been confirmed as valid and reasonable, in that today, regardless of vaccination status, the CDC Guidance does not recommend testing for those who are not symptomatic.  Despite this, the Defendant terminated Plaintiffs and continues to refuse to restore Plaintiffs to their former positions.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964**
**Failure to Provide Reasonable Accommodation**
**(Involuntary, Unpaid Leave and Termination on the Basis of Religion)**
All Plaintiffs Against Defendant BP
(42 U.S.C. § 2000e et seq.)

---

[14] "With new guidance, CDC ends test-to-stay for schools and relaxes COVID rules" NPR (Aug. 11, 2022), https://www.npr.org/sections/health-shots/2022/08/11/1116991600/with-new-guidance-cdc-ends-test-to-stay-for-schools-and-relaxes-covid-rules.  (last visited December 15, 2022)

1
2

132.     Plaintiffs hereby reallege and incorporate by reference the preceding paragraphs, as though fully set forth herein.

3
4
5
6
7
8
9
10
11

133.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for a covered employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, **religion**, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, **religion**, sex, or national origin.  (emphasis added)

12
13
14

134.     Plaintiffs were, at all times relevant herein, employees covered by 42 U.S.C. § 2000e(f) et seq., which prohibits discrimination in employment on the basis of religion.

15
16

135.     At all times relevant hereto, Title VII was in full force and effect and binding on Defendant, an employer as defined by  42 U.S.C. § 2000e(b) et seq.

17
18

136.     At all times relevant hereto, Plaintiffs were performing competently in the positions they held as employees of Defendant.

19
20
21
22
23

137.     Plaintiffs held at all times relevant, and continue to hold bona fide, deeply and sincerely held religious beliefs that conflict with receiving the COVID-19 vaccine; they each informed Defendant of such sincerely held religious beliefs and the conflict with the BP work requirement to receive the COVID-19 vaccine.

24
25
26
27
28

138.     The Plaintiffs were each subjected to an adverse employment action – namely, they were placed on involuntary, unpaid leave[15], and ultimately terminated by Defendant BP– for failure to comply with the conflicting employment requirement.

139.     Title VII makes it an unlawful employment practice to fail or refuse to make reasonable accommodations for the religious beliefs and practices of an employee.

140.     Defendant denied Plaintiffs a religious exemption and/or religious accommodation due to their sincerely held religious beliefs that conflict with the work requirement.

141.     Instead of exploring reasonable accommodations, engaging in a meaningful dialogue, and offering a good faith interactive process to discuss reasonable accommodations with Plaintiffs, the Defendant placed the Plaintiffs on involuntary unpaid leave for two months.  After two months, Defendant terminated Plaintiffs.  Unpaid, involuntary leave and termination are both types of adverse employment actions under Title VII.

142.     Plaintiffs' skill and expertise fall within an area with limited opportunities to perform their jobs in a very tight job market and profession.  The job market for these types of positions is extremely small and specialized.  Defendant did not consider any reasonable accommodations that would have allowed Plaintiffs to continue work for BP either in their previous roles with modifications or in alternate jobs roles within BP.

143.     Plaintiffs requested reasonable accommodations of masking and testing for both natural immunity and symptoms and quarantine.  Defendant denied these reasonable accommodations as requested by Plaintiffs.

144.     Plaintiffs' proffered reasonable accommodations were validated by the CDC on August 11, 2022.  That notwithstanding, the Defendant still refuses to reinstate Plaintiffs even

---

[15] Plaintiff Ardoin was on unpaid leave from November 15, 2021 until December 6, 2021. He transitioned to paid leave pursuant to the FMLA beginning on December 7, 2021.  However, he was terminated with the other Plaintiffs.

despite the CDC's recommendations that the vaccinated and unvaccinated are to be treated the same.

145.     Upon rejecting the reasonable accommodations requested by Plaintiffs, Defendant did not explore other reasonable accommodations, engage in a meaningful dialogue, and offer a good faith interactive process to Plaintiffs in order to identify other reasonable accommodations.

146.     There is a dispute between Plaintiffs and Defendant.  Defendant asserts that it can comply with Title VII by placing Plaintiffs on involuntary, unpaid leave as a form of reasonable accommodation.  Plaintiffs disagree.  Plaintiffs' legal position is that unpaid, involuntary leave without effort to consider or provide alternative accommodation is not consistent with an employer's accommodation obligations under Title VII.

147.     There is a dispute between Plaintiffs and Defendant.  Defendant asserts that reasonable accommodations requested by Plaintiffs – including masking and regular testing – posed an undue hardship on Defendant, which is more than a *de minimis* burden. Plaintiff disagrees.  Plaintiffs' legal position is that Plaintiffs' reasonable accommodation requests did not impose an undue hardship.  For example, similarly situated BP employees outside of the GoM region were not subjected to the COVID-19 vaccine requirement.

148.     Instead of considering and offering Plaintiffs reasonable accommodations, Defendant placed the Plaintiffs on involuntary, unpaid leave and terminated them for engaging in protected activity, specifically requesting a religious accommodation under Title VII.

149.     Defendant, by placing Plaintiffs on involuntary, unpaid leave and subsequently terminating Plaintiffs, failed to provide reasonable alternative means of accommodating the religious belief or observance that was in conflict with the COVID-19 vaccination work requirement in violation of Title VII.

150.     Plaintiffs have suffered significant damages as a result of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits, contributions to their pension plans, other associated financial costs, emotional distress, and the costs of bringing this action.

151.     Defendant intentionally violated Plaintiffs' rights under Title VII with malice or reckless indifference.

152.     Plaintiffs are entitled to reinstatement, backpay, front pay, compensatory damages, punitive damages, attorney's costs and fees, costs of suit, a declaration that Defendant violated their rights under Title VII, and an injunction to enjoin the Defendant from enforcing discriminatory policies and reinstating Plaintiffs.

153.     Plaintiffs are entitled to further relief as more fully set forth below in their Prayer for Relief.

### SECOND CAUSE OF ACTION
**Violation of Title VII of the Civil Rights Act of 1964**
**Failure to Provide Reasonable Accommodation**
**(Retaliation on the Basis of Religion)**
Plaintiff Stidham Against Defendant BP
(42 U.S.C. § 2000e et seq.)

154.     Plaintiff hereby incorporates and realleges the preceding paragraphs, as though fully set forth herein.

155.     Title VII of the Civil Rights Act of 1964 forbids an employer from retaliating against an employee because of the employee's opposition to "any practice made an unlawful investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

156.     The EEO laws prohibit punishing job applicants or employees for asserting their rights to be free from employment discrimination including harassment.  Asserting these EEO

rights is called "protected activity."   Requesting an accommodation for a disability or for a religious practice is "protected activity[16]."

157.    Plaintiff asserted his right for reasonable accommodations based on his sincerely held religious beliefs.

158.    Defendant did not provide reasonable accommodations, instead retaliating against him by placing Plaintiff on involuntary unpaid leave for two months and terminating him. Moreover, Plaintiff lost access to company email and internal communications when attempting to secure other positions within the company during the period of unpaid leave.

159.    Defendant retaliated against Plaintiff for exercising their religious rights by intentionally obstructing or denying him job opportunities within the company.

160.    Plaintiff would have received his 2021 bonus but for Defendant's refusal to grant them a reasonable accommodation.  Furthermore, Plaintiff would have kept his Retiree Reimbursement Account (RRA) but for Defendant's refusal to grant him a reasonable accommodation.

161.    Plaintiff suffered significant damages as a result of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits, loss of pension contributions, other financial costs, emotional distress, and the costs of bringing this action.

162.    Defendant intentionally violated Plaintiff's rights under Title VII with malice or reckless indifference.

163.    Such adverse employment actions constitute retaliation because Plaintiff sought accommodations for his religious exemptions.

---

[16] https://www.eeoc.gov/retaliation

164.     Plaintiff is entitled to reinstatement, back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, a declaration that Defendant violated his rights under Title VII, and an order to prevent Defendant from enforcing their discriminatory policies, and reinstating Plaintiff to his previous position.

**THIRD CAUSE OF ACTION**
**Violation of the Texas Labor Code**
**Section 21.108 -- Discrimination on the Basis of Religion**
All Plaintiffs against Defendant BP

165.     Plaintiffs hereby incorporate and reallege the preceding paragraphs, as though fully set forth herein.

166.     Pursuant to Section 21.108 of the Texas Labor Code, in cases of "discrimination because of religion or on the basis of religion … or on the basis of any aspect of religious observance, practice, or belief, … the employer [must show that they are] unable reasonably to accommodate the religious observance or practice of an employee or applicant without undue hardship to the conduct of the employer's business." *Id.* Tex. Lab. Code § 21.108.

167.     Plaintiffs at all times relevant herein were employees covered under the Texas Labor Code.

168.     Defendant at all times relevant herein was an employer covered under the Texas Labor Code.

169.     Plaintiffs at all times herein were members of a protected religious class.

170.     Defendant intentionally discriminated against Plaintiffs by taking adverse employment actions against them as a result of Plaintiffs' membership in a protected religious class.  Specifically, after Plaintiffs submitted their requests for Religious Exemption due to the conflict between their sincerely held religious beliefs and receipt of the COVID-19 vaccine as a work requirement, Defendant placed Plaintiffs on involuntary, unpaid leave and subsequently terminated them.

171.     Plaintiffs have suffered damages as a result of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits, loss of pension contributions, other associated financial losses, emotional distress, and the costs of bringing this action.

172.     Plaintiffs are entitled to such relief as set forth below in their Prayer for Relief.

**FOURTH CAUSE OF ACTION**
**Violation of the Texas Labor Code**
**Section 21.055 -- Retaliation**
All Plaintiffs Against Defendant BP

173.     Plaintiffs hereby incorporate and reallege the preceding paragraphs, as though fully set forth herein.

174.     Pursuant to Section 21.055, "[a]n employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, … opposes a discriminatory practice."  Tex. Lab. Code § 21.055.

175.     Plaintiffs at all times relevant herein were employees covered under the Texas Labor Code.

176.     Defendant at all times relevant herein was an employer covered under the Texas Labor Code.

177.     Plaintiffs at all times herein are and were members of a protected religious class.

178.     Plaintiffs asserted their rights against taking the COVID-19 vaccine and asked for reasonable accommodations based on their sincere religious beliefs.

179.     In response, Defendant intentionally discriminated against Plaintiffs by taking adverse employment actions against them as a result of Plaintiffs' membership in a protected religious class.  Specifically, after Plaintiffs submitted their requests for Religious Exemption due to the conflict between their sincerely held religious beliefs, Defendant still continued to pressure Plaintiffs to take the vaccine verbally and through email, and when they refused, retaliated by placing Plaintiffs on involuntary, unpaid leave and subsequently terminated them.

180.     Plaintiffs have suffered damages as a result of Defendant's retaliatory actions, including past and future lost wages and benefits, loss of pension contributions, other associated financial losses, emotional distress, and the costs of bringing this action.

181.     Plaintiffs are entitled to such relief as set forth below in their Prayer for Relief.


**FIFTH CAUSE OF ACTION**
**Wrongful Termination in Violation of Public Policy**
**Common Law Tort**
All Plaintiffs Against Defendant BP


182.     Plaintiffs hereby reallege and incorporate by reference the preceding paragraphs, as though fully set forth herein.

183.     Under the common law tort of wrongful termination in violation of public policy,  a plaintiff must show that: (1) clear public policy existed and was manifested in state or federal constitution, statute or administrative regulation, or in common law; (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize public policy; (3) the plaintiff's dismissal was motivated by conduct related to public policy; and (4) the employer lacked overriding legitimate business justification for the dismissal.

184.     First, Texas has clear-cut policies against religious discrimination as found in its Labor Code as described above.

185.     Moreover, Governor Abbott specifically issued Executive Orders against vaccine mandates.  Pursuant to Texas Governor Greg Abbott's executive order issued on October 11, 2021, "[n]o entity in Texas can compel receipt of a COVID-19 vaccine by any individual, including an employee or a consumer, who objects to such vaccination for any reason of personal conscience, based on a religious belief, or for medical reasons, including prior recovery from COVID-19."[17]

186.     Second, treating Plaintiffs in such a discriminatory fashion due to their having expressed their sincere religious beliefs violates such public policy.  These dismissals are tantamount to conduct prohibited by public policy as seen in Texas' labor laws and executive orders that specifically prohibit Defendant's conduct.

187.     Third, Defendants placed Plaintiffs on involuntary, unpaid leave and then terminated Plaintiffs in January 2022; each of these actions by Defendant are adverse employment actions under applicable law and public policy.  Such adverse employment actions constitute both religious discrimination and retaliation because Plaintiffs sought accommodations for their religious exemptions.

188.     Fourth, Defendant lacked any legitimate business justification for these dismissals, basing its discriminatory treatment of Plaintiffs on pretextual reasons.

189.     There were no valid reasons whatsoever for stripping Plaintiffs of their salaries, health benefits, and then terminating them.

190.     There were no valid reasons whatsoever for stripping Plaintiffs of their bonuses and RRA.

---

[17] Executive Order GA-40, Page 2, October 11, 2021

191.     Plaintiffs were wrongly deprived of their salaries and livelihoods for pursuing their right to seek an accommodation of their sincerely held religious beliefs.

192.     The Texas Labor Code declares by statute that such unlawful termination is in violation of public policy.

193.     Plaintiffs suffered significant harm as a result of Defendant's unlawful discriminatory actions, past and future lost wages and benefits, associated financial damages, loss of pension contributions, emotional distress, and the costs of bringing this action.

194.     Plaintiffs are entitled to back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, a declaration that Defendant violated their rights under Title VII, and an injunction preventing Defendant from enforcing their discriminatory policies.

195.     Plaintiffs are entitled to further relief as more fully set forth below in the Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray this Court grant relief as follows:

A.  Order Defendant to immediately reinstate Plaintiffs to their previous positions, or in the alternative award Plaintiffs front pay, including future wages and benefits;

B.  Award Plaintiffs backpay, including past loss of wages and benefits, plus interest;

C.  Award Plaintiffs all lost promotional pay, salary increases, contributions to pensions, and reimbursement of all penalties to withdrawals from Plaintiffs' 401Ks and other sources necessary to live and support their families after being unlawfully deprived of employment.

C.  Award Plaintiffs other and further compensatory damages in an amount according to proof;

D.  Award Plaintiffs noneconomic damages, including but not limited to mental suffering;

E.  Award to Plaintiffs reasonable attorney's fees and costs of suit;

F.  Award Plaintiffs punitive damages;

G.  Enjoin Defendant from continuing their discriminatory policies;

H.  Declare that Defendant has violated Title VII and the Texas Labor Code; and

I.   Grant Plaintiffs such additional or alternative relief as the Court deems just and proper, as well as any other appropriate relief to which Plaintiffs may be entitled including all "appropriate relief" with the scope of F.R.C.P. 54(c).

Dated:  December 17, 2022

> */s/ Naomi Jiyoung Bang*
> Naomi Jiyoung Bang
> PACIFIC JUSTICE INSTITUTE - TX OFFICE
> Texas State Bar No. 24054931
> SDTX No. 604286
> 2121 Market Street, Unit 37
> Galveston, TX 77550
> Tel.: (346) 339-6352
> Email: nbang@pji.org
>
> */s/ Emily C. Mimnaugh*
> Emily C. Mimnaugh
> NV State Bar No. 15287*
> PACIFIC JUSTICE INSTITUTE - NV OFFICE
> 1580 Grand Point Way #33171
> Reno, NV 89533
> Tel.: (916) 857-6900
> Email: emimnaugh@pji.org
> *Pro hac vice admission pending*
>
> */s/ Charlotte Y. Bergeron*
> Charlotte Y. Bergeron
> Louisiana State Bar No. 24293*
> 1040 Audubon St.
> Lake Charles, LA 70605
> Tel.: (225) 229-7135
> Email: cbergeronlaw@gmail.com
> *Pro hac vice admission pending*
>
> *Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiffs demands a jury trial on all causes of action and claims to which they have a right.

## **VERIFICATION OF PLAINTIFF RYAN ANDREPONT**

I, Ryan Andrepont, am a Plaintiff in the above-captioned matter. I have read the VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.]. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the United States and the State of Texas, that the foregoing is true and correct.

*/s/ Ryan Andrepont_____*
Ryan Andrepont
December 17, 2022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>VERIFICATION OF PLAINTIFF BRODY ARDOIN</u>

I, Brody Ardoin, am a Plaintiff in the above-captioned matter. I have read the VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.]. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the United States and the State of Texas, that the foregoing is true and correct.

*/s/  Brody Ardoin*_____
Brody Ardoin
December 17, 2022

## <u>VERIFICATION OF PLAINTIFF PATRICK J. BABINEAUX, III</u>

I, Patrick J. Babineaux, am a Plaintiff in the above-captioned matter. I have read the VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.]. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the United States and the State of Texas, that the foregoing is true and correct.

*/s/  Patrick J.Babineaux,III*_____
Patrick J. Babineaux, III
December 17, 2022

## **VERIFICATION OF PLAINTIFF WILLIAM FARRELL**

I, William Farrell, am a Plaintiff in the above-captioned matter. I have read the VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.]. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the United States and the State of Texas, that the foregoing is true and correct.

*/s/  William Farrell*_____
William Farrell
December 17, 2022


## **VERIFICATION OF PLAINTIFF TIMOTHY STIDHAM**

I, Timothy Stidham, am a Plaintiff in the above-captioned matter. I have read the VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.]. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the United States and the State of Texas, that the foregoing is true and correct.

*/s/  Timothy Stidham*_____
Timothy Stidham
December 17, 2022